Good morning, Your Honors. Jared Wiginton representing Plaintiff Appellant John Thomas Entler. I'd like to reserve two minutes for rebuttal. Okay. Your Honors, the District Court's dismissal of Mr. Entler's complaint with prejudice should be reversed and remanded for three reasons. First, Mr. Entler stated retaliation claims. Second, qualified immunity is inapplicable. And third, the District Court abused its discretion when dismissing his complaint with prejudice without affording him the opportunity to amend his complaint first. Now, as a pro se plaintiff in a civil rights case, Mr. Entler's complaint should be afforded liberal construction, and he'll also be afforded the benefit of any doubt. As such, Mr. Entler need only allege sufficient factual matter, except it is true that states a claim that's plausible on its face. Mr. Entler has done so here. Going to Mr. Entler's retaliation claims, there are two questions. Whether he sufficiently alleged he was engaged in protected conduct, and whether he sufficiently alleged that the application of the prison regulations or the sanctions were not rationally related to a legitimate peniological purpose. And just to be, just so I can be clear, it's retaliation, forbidden retaliation, if he were, if he engaged in protected conduct. So the question really is whether he engaged in protected conduct. Correct. Thank you, Your Honor. So counsel, did, did he do anything other than tell some people at the time that he was going to sue them if they didn't follow what he thought was required? No, Your Honor. A review of the record show that Mr. Entler's informal grievances specifically threatened to sue only to enforce legal rights he believed he was entitled to in good faith. Yeah. And so pretty much anything that he didn't like, he said, I'm going to sue you. That's, he did, he did state in this, in these particular sanctions, he was seeking to enforce legal rights and he did threaten to sue. Correct. But going to that next point, I mean, threatening to sue is protected conduct, whether or not it's in the form of a grievance or outside of it. Did he in fact sue until we get to this lawsuit? That is to say, this lawsuit is retaliation for, or in return for, to take the word of retaliation away for his having threatened to sue. Did any of those earlier threats result in lawsuits? Not from the record that I was afforded, Your Honor. Mr. Entler did appeal all of his sanctions all the way up and he attempted to file a formal grievance, but was denied the opportunity for that grievance to be entertained by the grievance coordinator because he had been sanctioned. So what if he every day was writing letters and he became like a nuisance? Like in Brooklyn, we have a frequent filer rule. We have some people who, you know, are filing, you know, complaints, civil lawsuits actually every day. And so we sort of like have to manage that because otherwise we're inundated with cases all the time by a single, you know, filer. Does there come a point in time here after he does this five times, six times, seven times, eight times, 10 times that the authorities can say enough is enough that you can't do this anymore? You know, the frequency of these things creates administrative problems and we can't just handle it all the time. I mean, isn't some of that implicated in this case? The five times he complained? I don't believe any of that is implicated in this case. However, the offender grievance program, the grievance procedures that are in place specifically state that an inmate cannot have more than five grievances in the system at the time of the formal grievances. There is a five grievance limitation? I'm not aware. In the formal, for the formal grievance procedures, once they've been accepted, that's my understanding from what's written in the procedure. You can only have five grievances in what period of time? In the appeals, in the formal grievance process being reviewed at that level. You can only have five reviewed at a time in the formal grievance process. And then after that is completed, you can have a new batch of five? That's my understanding, Your Honor. And for informal grievances, which are at issue here, there is no limit in the process, and that's something that the Department of Corrections may be free to do, but that's not really an issue here. The sole question is whether or not Mr. Andler was engaged in protected conduct when he threatened to sue. What if the rule, instead of 633, which talks about coercion and intimidation, said that if you are a frequent complainant, so to speak, and said five or more would warrant that determination over a period of time, would that be something that the prison authorities could lawfully do? Again, that isn't necessarily an issue, but I would assume that might, that would probably be something, but I haven't fully vetted that, so I'm afraid to commit. That's not this case. That's not this case. He relied upon 633, the coercion statute, the regulation. Correct. And he's also alleged, you know, we're looking at his complaint right now, and he's alleged that he was retaliated against for participating in the grievance process, as explained and developed by the Department of Corrections, for the content of his grievances. They said they sanctioned him because he threatened to file a lawsuit. And all of that is protected conduct in this circuit. Yeah, let's say, let's say that I, we agree with you. I, speaking only for myself, I'm actually tempted to agree that he engaged in protective conduct. But the next question, if, because this is a damage suit, help me out with qualified immunity. How obvious would it have been to his, to the defendants here that this was a constitutional violation? Yeah, absolutely. Now, in this circuit, it would be very clear. Bradley and Brodheim both have established for now 20 years, over 20 years, 25 years, that you can't punish an inmate for the content of his grievance. But that case did not deal with qualified immunity, nor did Hodges. Those are the two cases which I think pop out of the pages here for us to reflect upon, but neither of them were qualified immunity cases. That's correct, Your Honor. And if you look even most recently to the Ritchie decision, which was a 2000 decision, both the Judge Fletcher and Judge Gould, you had participated in, the court didn't actually reach the qualified immunity question at the motion to dismiss stage. Now, again, in terms of satisfying qualified immunity, existing case law in the circuit that has established that law is sufficient to meet that standard, such that a defendant would, should reasonably know that that's the law. And if he's violating it, he can be held liable for it. This is an odd sort of question, and I'm not sure that it's a sort of a complete response, but if it's so obvious, why are you asking us to reverse the district judge below? Why are we asking you to reverse the district court below? Because they dismissed Mr. Antler's complaint with prejudice, Your Honor. Well, I understand that, but what I'm saying is, if it's so obvious a question of law that you're telling me the judge got it wrong, why would it so obvious for the prison officials that we can say it was so obvious we're going to get damages against you, when your argument is that a well-trained lawyer, that is to say, a federal judge, dismisses the complaint as meritless? Well, I can't speak to the reasons why Judge Succo dismissed this claim on that ground and affirmed the magistrate judge. What I can say is that if you look at their decisions, and Judge Succo adopted the magistrate judge's decision on the qualified immunity issue, they took a very narrow stance on what was at issue. And in that, they made factual assumptions that Mr. Antler was using the grievance process as a guise to coerce inmates. And all of these things are questions of fact, and none of that has to do with anything at this point in the proceedings, which is we're at the 12B-C, 12B-6 stage or 12C stage, same thing. He's alleged fact-sufficient to say that this law is clearly established. There's case law that supports that in this circuit. And so the district court just was wrong. Well, I'm curious about what happens if we were to remand the case. It's a procedural posture. It's in the pleading stage, right? So, you know, presumably it alleges a sufficient claim and it goes back. Now, I read Hodges and Brodheim and I'm confused by those cases because while I don't think the court really dwelt on it, they both went back with jury determinations. I don't know whether it was a summary judgment, I guess it was a summary judgment posture in both those cases. Is there a jury determination that is at the end of the line? What happens on remand here? What is the reason for discovery? And is this the type of case that would require jury determination as compared to a judicial determination? Well, on remand, Your Honor, Mr. Antler should be afforded the opportunity to amend his complaint to also specifically allege his implicitly pleaded claims first. Second, Mr. Antler should be afforded the opportunity to conduct discovery to verify, in fact, that every one of these defendants was fully aware of what was happening and was not fulfilling their constitutional duties, and I suspect that that would, in fact, go to a jury trial. So you think a jury would be necessary ultimately to determine whether this was an appropriate penological interest, legitimate penological interest? That's always a jury question or can it ever be decided as a matter of law? Well, I think in the circuit it can be decided as a matter of law, Your Honor. But should it be in this case? I think so, because it's a retaliation case. And if you look at, I'm running out of time, excuse me. If you look at Shepard versus Quillen and Bruce versus East, it's clearly established that if you allege retaliation and retaliation is found specifically with this arbitrary sanction, for example, regarding his lying, that that's sufficient right there alone to end the case as a matter of law. Counsel to the school, if I could interject a question. Isn't the only issue for us, whether the case could be dismissed on the pleadings without a factual record so that if we send it back, whether there could be a summary judgment or there would have to be a trial, that depends on the fact record established and that could be the subject for your next appeal. Correct, Your Honor. Well, don't we have to rule on the qualified immunity issue as a matter of law at this stage? Well, the district court decided that issue and we've appealed it. I think you do have to rule on it. I think you have to resolve it. Can the qualified immunity issue be decided without any factual record? I think in regards to the allegation that he was arbitrarily sanctioned for lying, it could because the record is attached in his pleadings. But for his other claims of retaliation, no, the factual record would need to be developed. And that's evident from the district court's kind of fact-based perspective in looking at qualified immunity. But no outstanding factual issues that we need to be concerned about before we decide the qualified immunity issue is what you're saying. I think there are. I think it depends on what claim you're looking at. So I think there are multiple claims. For one of them, I would say there's not because the facts are clearly established in the record that Mr. Entler did not lie when he said that bar unit manager Clark sanctioned him or threatened to sanction him for not working. I know you're over time, but you know, I guess from Brooklyn, we just ask a lot of questions. But I'm concerned also about the fact that one out of these five so-called kinds of grievances threatened criminal action. The others were all threatening civil litigation. Do you see a difference? Do we persist between the criminal and the civil for qualified immunity purposes, perhaps? Or otherwise? I don't think there is a meaningful difference on that. The threat to file a criminal complaint was also implicated in Rhodes and this court's decision. And, and that was, I don't, I'm not sure they got the qualified immunity issue in that case. I think there was. Yeah. But, but I believe that this would, this would fall into just the traditional petition clauses seeking relief. Well, you have clearly established constitutional law that you have the right to bring civil litigation. But I don't know of any established law, maybe you can point me to some, that says you also have the right to, you know, file criminal complaints anytime you want to against prison officials. Wouldn't that at least impact qualified immunity analysis? Regarding, yes, perhaps regarding that one sanction, Your Honor. That might be subject to qualified immunity. Okay. We've taken you over. Let's hear from the other side, but we will give you a chance to respond. Thank you so much, Your Honors. If you want to, the podium's got a little electric thing. You can make it move down. There you go. Good morning, Your Honor. Assistant Attorney General Tim Fulner on behalf of the defendants. Based on a number of Kyson letters that Mr. Entler sent directly to prison staff, he was issued disciplinary infractions for violating a prison rule against coercion. The district court's decision to dismiss Mr. Entler's claims should be affirmed for three primary reasons. First, defendant's actions served legitimate penological interests. Second, defendants were entitled to qualified immunity because they did not violate Mr. Entler's clearly established rights. And third, the majority of defendants did not personally participate in the writing of these alleged infractions. Let me ask you this question. You have a series of disciplinary action that has been taken against this person. As I read the record, there was the first batch of disciplinary proceedings encompassed three of these kites, one of which was the criminal complaint, but there was one on July 26th. And let's use that one as an example of what I'm concerned about. This was the issuance of a serious infraction for the July 19th letter. He sent about the religious program manager threatening to sue to protect his religious freedom. He complained about that, right? Uh, and, uh, he was sanctioned according to the record here under rule 663, uh, for five days of cell confinement. Now, what if instead of writing that letter or complaining about that, he went to have directly filed a civil lawsuit? Would he not have the constitutional right to do that? Yes, Your Honor. But to be clear, what the coercion was in this circumstance was not the fact that he wrote the letter to the religious programs manager. It was the fact that he sent the kite with a copy of that letter to Mr. Clark, as if to say to Mr. Clark, look, I'm complaining about you. And that is what the disciplinary hearings officer relied upon. But what if he sued him directly? Went to the Brooklyn federal court, brought a 1983 claim and said that, you know, he is restricting my religious freedom here. He would have the right to do that. Would he not? Yes, Your Honor. Assuming it was not complaining about it, it seems that's less offensive. It gives the person the opportunity to resolve this matter with having to be defendants in the lawsuit. To be clear, Your Honor, Mr. Antler does have a right to generally complain, but it does matter how he exercises that right. Because he wrote a letter. We're in the prison context and contacts context matters for the first amendment, an inmate's first amendment's rights are restricted. I don't want to be the dead horse, but you have the right to go directly to court, right? Absolutely, Your Honor. But in the prison context, inmates have to exercise their first amendment rights in a manner consistent with legitimate penological interests. And those are words where this makes no sense to me. It seems to me that he's doing a kindness to the prison authorities instead of suing them directly by just writing a letter complaining about it. It's not the fact that Mr. Antler was complaining, Your Honor. It's the fact that Mr. Antler was complaining and then attaching to that complaint some kind of threat to take action, such as filing criminal charges. No, I'm talking about the civil one now. The criminal one may be a separate consideration. The civil one. Even the, even the fact that he's threatening civil litigation, he's sending that complaint to the religious programs manager and then sending a copy to Clark as if to say, look, I'm complaining about you, I'm going to sue you, so here, make that decision. I just explained to you why I'm confused. You tried your best to answer. Maybe you want to go on to something else. Sure, Your Honor. Even if the court determines that there is a statement of a constitutional violation here, defendants would be entitled to unqualified immunity based on this court's case law. The Hargis decision recognized that a coercion regulation in a prison setting serves a legitimate penalty. My case was not a qualified immunity case. That is correct, Your Honor. But in this case, I think the district court judge actually did a pretty admiral job in trying to rectify Hargis and Brodheim. Those, those authorities appear to be pretty parallel. The Brodheim case doesn't discuss Hargis at all or try to rectify Hargis. And so the district court was struck with these parallel lines of authority and to try to rectify and make them consistent. And the district court basically said, there's really no way to do so. And when there is a lack of clarity in the case law, qualified immunity applies. And so there is no clearly established right here because there is no clear constitutional violation based on Hargis and Brodheim. Hargis and Brodheim, none of them dealt with qualified immunity. They just said that there was, this was not a summary judgment dynamic and sent the case back for jury determination on the pedological interests and other factors as well. It didn't really dwell on it, but it didn't really inform me about the issue of qualified immunity at all. Well, that is correct, Your Honor. But qualified immunity has two steps. And the first step is whether there's a constitutional violation and then whether the law was clearly established. So it certainly would go to the state of the clarity of the law, those two cases, which discuss whether or not there was a First Amendment violation. So that certainly informs this Court's decision on qualified immunity to determine whether it was clearly established. Additionally, Bradley and Brodheim both dealt with the formal grievance process, and they specifically relied on the fact that the inmate was using the formal grievance process. Both Bradley and Brodheim recognize that there is a general penological interest for disrespect regulations in the prison context. But they said that that connection is very, very weak when applied to a written formal grievance. These were not written formal grievance. These were threats to take action against the staff. It's highly between informal and formal. That's what you're urging, that if it doesn't take on a formal aspect, that this is a horse of a different legal color? Absolutely, Your Honor. And that's based on this Court's decisions in Brodheim, Bradley, and Ritchie, which all discuss the regulations in the context of a formal grievance process. But they don't say that an informal letter, you know, is not protected. They only would deal with what they had in those cases, which was a more formal grievance. Well, Your Honor, I respectfully disagree. I think the Court's analysis in Bradley and Brodheim hinged on the fact that they were formal grievances because... As I read it, there's not a word there that says we would come to a different decision if this was a so-called informal process. I don't see that in those cases at all. Well, Your Honor, I think the Court does because the analysis that the Court uses is that whether there's some kind of less restrictive alternative that a prison could use to applying a disrespect regulation in the context of a formal grievance. In the formal grievance process, there is a way to screen individuals from the complaints. That's the entire purpose of a formal grievance process, is that they have designated staff to handle the inmates' complaints. And the Court said that the application of disrespect regulations to that kind of formal process is a very weak connection between legitimate interests. Isn't there a process here that allows for so-called informal complaints as part of the grievance machinery? No, Your Honor. The defendants do not recognize that process. Mr. Entler has recharacterized his kites and letters to be called informal grievances, but that's nothing that the Department of Corrections... What was missing here? What would have made it a so-called formal grievance? The formal grievance in the Washington Department of Corrections, Your Honor, is initiated by submitting a written complaint on a written form to the grievance coordinator. He didn't use the right form, right? He didn't submit it to the right individuals, Your Honor. He directed his comments directly to the prison staff affected, as opposed to using the prison grievance process, which directs him to send it to prison grievance staff. But does that mean... Oh, sorry. Please. I would like you to address one question of interest to me. Is there any fact here that could be developed that would shed light on whether the defendants are entitled to qualified immunity? No, Your Honor. Simply because Mr. Entler's kites and letters, those that the individual is determined to be coercive, are in the record. Certainly, 12b-6 is a low barrier. However, a party can plead themselves out of court by including a lot of factual information. Here, Mr. Entler's complaint included all the relevant information needed to make the qualified... someone is not protected, even though suing them would be protected. No, Your Honor. I'm saying that the application of a coercion regulation to that type of communication sent directly to prison staff does not violate Mr. Entler's clearly established constitutional rights, because this Court has recognized that generally coercion regulations in a prison setting serve a legitimate penological interest.  Well, I'm threatening to sue if I write it formally. I'm threatening to sue if I write it informally. I can understand why the prison might have rules as to what things you're supposed to put in a formal complaint for purposes of sort of bureaucratic regulation, exhaustion, and so on. But why is it more or less coercive, depending on whether it's in a formal or informal complaint? Because, Your Honor, it's directed to the staff who is making the decision, and it's threatening, I'm going to sue you if you do not make the decision in my favor. I understand that. But if he writes it in a formal complaint, I am going to sue, and names the individual, well, it has the same consequence. The person receiving that information, that Mr. Entler is going to sue that person, well, it either comes directly or indirectly, but the message is the same. I'm going to sue you. So why is one more or less coercive than the other? Well, to clarify, Your Honor, are you saying that a formal grievance saying, I'm going to sue the grievance coordinator, or I'm going to sue a different staff member who's not the grievance coordinator? Well, whoever it is. That is to say, I'm going to threaten X, who's not a grievance coordinator. I say that to that person, I'm going to sue you. Or I go through the formal grievance process, I'm going to sue that same person. I mean, I don't understand why it makes a difference as to coerciveness analysis, the form in which it's communicated, whether directly or indirectly. Because if, Your Honor, if the threat is to the person making the decision, if you don't do X, I'm going to do Y, then that is intended to make that person make a different decision. If it's directed to a third. Well, why does every demand letter and every lawsuit do that? Well, Your Honor, first of all, because it's not in the prison context and prison inmates just have more limited First Amendment rights. And so a letter to a demand letter by an attorney would be different than an inmate sending a letter directly to prison staff. And I think the entire context by which these communications were conveyed, and I'm seeing I'm out of time, but I can finish, is characteristic of why a coercion regulation is appropriate here. Mr. Rentler, for example, with regard to the LFOs, sent an initial kite saying, why are these LFOs being imposed upon me? That's perfectly appropriate. And the person sent back a copy of the court's order saying, here's the LFO that's being imposed on you. So Mr. Rentler writes back and says, this LFO is illegal, blah, blah, blah. I'm going, if you don't remove this LFO, I'm going to sue you. Remove this LFO, yes or no, will you remove it? Well, but the response is, okay, go ahead. I mean, as Judge Block said, well, in an odd sort of way, although I don't think it was Mr. Rentler's intention to be polite, it was more polite to say, if you don't do X, I'm going to sue you, instead of simply, well, he just sues him without warning. Now, I realize this is kind of a fantasy idea that he's trying to be polite. He's not trying to be polite, but I have trouble understanding why, if he can sue directly without saying he's going to sue, it's worse for him to say, I'm going to sue. I think it's because of the coercive aspect in a prison environment, Your Honor. Help me understand why this is coercive. Is somebody who receives this threat going to do something because Mr. Rentler says he's going to sue? Well, Your Honor, I think that's the risk, that the person is going to make a decision specific to Mr. Rentler based on the fact that he was willing to threaten them as opposed to trying to argue with them and persuade them based on the merits of his claim. Instead, he's saying, do X or I'm going to do Y, and that is coercion in a prison setting. And if that's not coercion, then I don't know any other kind of correct application of a coercion regulation in a prison setting. Because this was correctly coercive and there is no clearly established right to coerce prison staff, this court should affirm. Well, if he threatened to kill them, that would be coercion. Okay. Thank you. Thank you, Your Honor. We've taken all your time, but let's put a minute on the clock. I think I'm correct that you're doing this as part of the pro bono project, is this correct? Thank you, Your Honor. It's just a couple of quick points. First, defendants concede that Mr. Rentler does have a general right to complain. They take issue with the fact that he has threatened a lawsuit, but this court has established in Jones that you can threaten to file a lawsuit and that's protected conduct. Here's an argument that occurs to me. I wasn't given this answer. I was kind of hoping maybe I would, but here's a possible argument as to why a threat to sue may be coercive, whereas a suit is not. If somebody does something, I don't like it, and I bring suit, well, we've got a fed-up complaint. Done. If someone does something and I say, if you don't take that back or if you don't correct that action, whatever, I'm going to sue you, that is designed to produce future action. In a way that a lawsuit is not, because the lawsuit says, you've done this, I'm suing you, we're moving on. So why is there not a difference in the sense of intending to produce an action when there is a threat to sue as distinct from the action is completed and I'm just bringing a lawsuit? Sure, Your Honor. The first point I'd make is that there was no coercion here. Coerce means to compel to act or choose something. Mr. Rentler did not get any of the things he sought. So his coercion was really attempted coercion. That regulation doesn't stand for that proposition. And second, going more specifically to your question, this is informal resolution. This is an informal grievance. Mr. Entler has been following the procedures that the Department of Corrections has held out that he should follow. And so he engaged in resolution. He has a 20-day time period from the time the conduct is occurring, the offensive conduct occurs, to file a formal grievance. So he has 20 days. The only way he can express or ensure that he can meet that deadline is to say, I'm going to file a suit. You have seven days, for example, before I will file a grievance. Do I understand the regulation correctly that unsuccessful attempts to coerce are covered? Or does it have to be successful coercion? Well, the regulation just says physical force and coercion. So physical force, intimidation, coercion. So if I were to say, I'm going to kill you, but I don't kill you, is that or not? Does that violate the regulation or not? Well, that's not protected conduct, Your Honor. That's a criminal threat. But does it constitute coercion? I'm trying to figure out within the meaning of the regulation. I think that would fall probably under a different regulation. If you go through the WACs that were provided in my brief on the addendum, you'll see that there's a slew of different things offenders can be punished for. I think there's something more specific for that. Okay. I just want one clarification. The informal complaint, you say, is covered under the umbrella of the grievance procedure. It's not necessary to just wait and file a formal grievance to come under the regulation? Correct, Your Honor. So the regulations are generally applicable to prison conduct. They're not unique to the grievance procedure. But the informal resolution is part and parcel to the offender grievance program as defined by... In what way, specifically? Is there anything that says that you can file an informal complaint before you bring a formal complaint? Yes. In fact, the grievance procedures specifically direct inmates to do that. Inmates are, quote, expected to first attempt to informally resolve their grievances. And one of the means for doing that is submitting these kites. But they're encouraged to submit kites. They're not. They're not encouraged. I argue that they're... I would argue that they're actually required to, to some extent, either whether it's as a facial matter or if it's in application. Can they go directly to file a formal grievance without first filing a kite? So there's a little bit of ambiguity in the grievance procedures on that front. But the grievance coordinator has discretion about whether or not he's going to accept an informal grievance or, excuse me, accept a complaint. And so, if you look at the record, I believe it's ER 590... I can get this site in a second. But basically, it says that the grievance coordinator will ask the inmates to report what informal resolution they've actually attempted. And then after that, the grievance coordinator may suggest other forms of informal resolution that they should take. And then if the matter is not properly resolved, that's the language of that sort. Only at that point can they, may then check the formal box. So the kites are embraced within the grievance... Absolutely, absolutely. Counsel, I know we've got you long over your time, but while we have you here, I wanted an answer to one further question. Yes, Your Honor. Is there any authority in any other circuit or anywhere in the country that specifically addresses whether prison officials, a reasonable prison official should be expected to have a thick enough skin that they can get a letter from an inmate complaining about something, you know, without going into a tizzy in reaction? That's a good question, Your Honor. I think if you look in my brief, there are cases, specifically in the Seventh Circuit, Pierces versus Welborn, that talk about oral complaints. I think Jones kind of gets at that a little bit. I'm not sure the holdings are specific. Jones was after the events here, so you can't consider that, I guess. I'm sorry, Your Honor. Jones happened after these events. No, no. The conduct in Jones that was considered protected occurred before. So it occurred in 2007, and that's what... The decision came after this.  It existed in 2007 under Jones. So I would, based on time, I'd just refer you back to the section. But I would say that there is no other circuit that I'm aware of that has decisively made the decisions like Brodheim and Bradley in the circuit, if that answers your question. Okay. Thank you. Okay. Thank you very much. Thank you, Your Honor. This is in no way a foreshadowing of the result in this case, but I do want to and his firm stole Reeves. So thank you very much. We very much appreciate that. It helps us very much in our work. So Entler versus Gregoire submitted for decision. The next case on the argument calendar this morning is United States versus Springs.
judges: W. Fletcher, Gould, Block